[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is an action for termination of an employment contract by Antonio Polyviou against his former employer, N.E. Contract Packers, and its President, Leonard Duboff. Plaintiff Maroulla Polyviou ("Mrs. Polyviou") is plaintiff's spouse. Mrs. Polyviou's sole claim, for loss of consortium, derives entirely from plaintiff's alleged causes of action. The plaintiff alleges the following facts in his complaint. The contract provided that it was to be reviewed yearly. It also provided that the plaintiff could terminate the contract simply by giving two months written notice of his intention. Additionally, N.E. Contract Packers could terminate the contract for cause by giving thirty days written notice, and the plaintiff would then be entitled to a severance pay of one half his base salary.
Plaintiff further alleges that Duboff stated in front of at least three other people that plaintiff had breached the employment contract and "had better call his lawyer." Four days later, Duboff hand delivered to the plaintiff a letter terminating him which stated that plaintiff had been terminated "for cause." Plaintiff claims that this notice did not cite any factual basis for his termination, and that in fact there was no justification for a cause termination. Plaintiff alleges that defendants breached the employment contract because he was terminated without cause and the without-cause procedure outlined in the contract was not followed.
Plaintiff realleges these factual allegations from the first count to plead a breach of contract claim, as well as to support other claims in counts two through eight. These other claims, which are the subject of the motion to strike, are: breach of implied covenant of good faith and fair dealing (count two); wrongful discharge in violation of public policy (count three); slander per se (count four); intentional infliction of emotional distress (count five); negligent infliction of emotional distress (count six); negligent misrepresentation (count seven); and loss CT Page 1335 of consortium (count eight) (by Mrs. Polyviou). On June 20, 1991, the defendants filed a motion to strike counts two through eight on the ground that counts failed to state a claim, and the reasons for the alleged legal insufficiency were contained in the motion. The plaintiff objects to the motion, and all parties have submitted supporting memoranda of law.
 II.
A motion to strike admits all well pleaded facts, and such facts are construed most favorably to the plaintiff. Mozzochi v. Beck, 204 Conn. 490, 491 529, A.2d 171 (1987). The motion to strike not only admits all allegations, but also "the facts necessarily implied by and fairly provable under them." Dennison v. Klotz, 12 Conn. App. 570, 577, 532 A.2d 1311 (1987), quoting Schmidt v. Yardney Electric Corp., 4 Conn. App. 69, 74, 492, A.2d 512 (1985). If facts provable under the allegations support a cause of action, then the motion to strike must be denied. Alarm Applications Co. v. Simsbury Volunteer Fire Co., 179 Conn. 541,545, 427 A.2d 822 (1980). "In judging a motion to strike . . . it is of no moment that plaintiff may not be able to prove its allegations at trial." Levine v. Bess Paul Sigel Hebrew Academy of Greater Hartford, Inc., 39 Conn. Sup. 129, 132, 471 A.2d 679
(Super.Ct. 1983).
With those principles in mind, the court will examine each count of the complaint which defendants claim should be stricken:
 A.
Defendants move to strike the second count on the ground that the implied covenant of good faith and fair dealing does not apply to the breach of a written contract for a definite duration. They also move to strike the second count on the ground that the plaintiff's termination does not implicate an important public policy. They claim in their supporting memorandum that Magnan v. Anaconda Industries, Inc., 193 Conn. 558, 479 A.2d 781 (1984) supports the proposition that the implied covenant of good faith and fair dealing only applies to at-will employees. They also claim that the plaintiff was not an at-will employee.
Plaintiff argues that the implied covenant of good faith and fair dealing applies to the employment contracts of both contractual and at-will employees. Alternatively, the plaintiff claims that even if the doctrine only applies to at-will employees, he was an at-will employee. Plaintiff also argues in his memorandum that the Connecticut Uniform Trade Secrets Act ["CUTSA"], General Statutes Section 52-50 et seq., indicates a public policy against the disclosure of trade secrets, and thus an important public policy is implicated in his termination. CT Page 1336
The court in Magnan was confronted with an at-will employee and held that the implied covenant of good faith and fair dealing applied to at-will employees. Magnan, supra, 572. The court did not expressly limit its holding to the at-will context. Although the court did not expressly expand its decisions to include contractual employees, it spoke broadly and stated that "[a] though we endorse the applicability of the good faith and fair dealing principle to employment contracts, its essence is the fulfillment of the reasonable expectations of the party." Id. (emphasis added). The court in Magnan, by its language, implied that the doctrine applies to all employment relationships, whether contractual or at-will.
The courts have provided guidance in what constitutes an at-will relationship. In Somers v. Cooley Chevrolet Co.,146 Conn. 627 (1959), the court stated that because the "employee's employment was indefinite as to duration, and either party could have legally terminated it at any time with or without cause," the employee was an at-will employee. Id., 629. See also Sheets v. Teddy's Frosted Foods, Inc., 179 Conn. 471, 474, 427 A.2d 385
(1979). Although there was a written employment contract in the instant case, it was for an indefinite term, not a definite term as defendants claim. Furthermore, as indicated in the employment contract with or without cause. The plaintiff in the instant case has, therefore, alleged facts from which the court could conclude that he was an at-will employee. Accordingly, the implied covenant of good faith and fair dealing should apply to the present case.
The plaintiff claims that CUTSA, which creates a cause of action for misappropriation by improper means of a trade secret, contains the public policy which defendant allegedly violated by terminating him. See General Statutes Sections 35-42 and 35-53. Improper means is defined as "breach of inducement of a breach of duty to maintain secrecy." General Statutes Section 35-51 (a) (emphasis added). "[W]hen there is a relevant state statute we should not ignore the statement of public policy that it represents." Sheets, supra, 480. CUTSA does indicate a public policy against disclosure of trade secrets. In paragraph 17 of the second count, the plaintiff claims that Duboff insisted that he disclose trade secrets gained in his employ at Coca-Cola to individuals in litigation with Coca-Cola. The plaintiff further alleges that when he refused to disclose such secrets he was terminated. Plaintiff's allegations, if proven, demonstrate an attempt on Duboff's part to induce plaintiff to disclose trade secrets and thereby breach a duty not to disclose such secrets. Therefore, plaintiff has stated a cause of action upon which relief can be granted. CT Page 1337
 B.
Defendants move to strike the third count on the ground that a cause of action for wrongful discharge cannot be maintained by an employee with a contract for a fixed duration. They also move to strike this count on the ground that the plaintiff has not identified an important public policy which his termination violated. As discussed in Section II.A. of this memorandum, a fair reading of the contract demonstrates that plaintiff was an at-will employee, and not "employed pursuant to a contract of fixed duration" as defendants maintain in their memorandum. Similarly, plaintiff has identified an important public policy as discussed in the previous section.
 C.
Defendants move to strike the fourth count on the ground that the plaintiff's allegations amount only to specific acts and are therefore not actionable per se. They also move to strike this count because the plaintiff fails to allege publication. Defendants argue in their memorandum that plaintiff has not alleged publication, but only alleged self-publication which is not "adequate under Strada [v. Connecticut Newspapers, Inc.,193 Conn. 313, 477, A.2d 1005 (1984)]." Plaintiff alleges in paragraph 20 of the fourth count of his complaint that Duboff said that plaintiff had broken his employment contract and "had better call his lawyer." Additionally, plaintiff's complaint alleges that Duboff made these statements to plaintiff "in the presence of at least three other individuals," had he argues that he has therefore sufficiently pled publication.
Slander is actionable per se if it "charges dishonesty or incompetence in office, or charges a professional person with general incompetence." Miles v. Perry, 11 Conn. App. 584, 602,529 A.2d 199 (1987) (citations omitted). Further, "[a]ll of the circumstances connected with the publication of defamatory charges should be considered in ascertaining whether a publication was actionable per se. The words used, however, must be accorded their common and ordinary meaning, without enlargement by innuendo." Id. at 603. In light of the circumstances surrounding the alleged remarks by Duboff, and construing the allegations in the plaintiff's favor; see Mazzochi, supra, 491; plaintiff has sufficiently alleged that he was charged with dishonesty in office or general incompetence and has therefore stated a claim.
The court in Strada did not discuss the requirements of publication; it simply stated "[b]efore a party will be held liable for libel, there must be an unprivileged publication of a false and defamatory statement." Strada, at 316. Strada provides no guidance to the case at bar as to whether there was sufficient CT Page 1338 publication. It is "fairly provable", however, (see Dennison, supra, 577) under paragraph 20 of plaintiff's fourth count that when Duboff made the statements to the plaintiff the three other people present heard the allegedly slanderous remarks. Accordingly, plaintiff has sufficiently alleged publication.
 D.
Defendants move to strike the fifth count of the complaint on the ground that the allegations do not amount to extreme and outrageous conduct, and also on the ground that the defendants' actions in terminating the plaintiff were privileged. They also move to strike this count because a mere breach of contract cannot lead to an action for infliction of emotional distress.
The defendants argue in their memorandum that "as a matter of law, the defendant's conduct cannot meet the legal requirement of `extreme and outrageous'." Defendants rely on Neuharth v. Connecticut Institute for the Blind, 3 Conn. L. Rptr. No. 14, 464, (March 8, 1991, Dunn, J.) for the proposition that the determination of whether the conduct is extreme or outrageous enough "is initially one for resolution by the court." Defendants also argue their conduct was privileged because they did nothing other than insist upon their rights under the employment contract to terminate plaintiff for cause in a permissible way. The plaintiff argues that such a determination is for a jury to make and that he has sufficiently pled a cause of action.
"[W]hether an actor's conduct is sufficiently extreme and outrageous to impose liability is one for the jury to decide." Brown v. Ellis, 40 Conn. Sup. 165, 167-68, 484 A.2d 944
(McDonald, J.). "Although the plaintiff's allegations might not arise [sic] to the level of extreme and outrageous conduct required, the court finds that this is a question of fact for the trier." Szczepanik v. Northeast Utilities Service Co.,1 CSCR 629, 630 (August 11, 1986, Arena, J.).
In Neuharth, the plaintiff's only allegation that defendant's conduct was extreme or outrageous was that plaintiff had been "orally assured . . . that she would not be discharged," and that subsequently she had been discharged. Neuharth, at 464. In the instant case, plaintiff alleges that Duboff wrongfully terminated him in violation of the employment agreement, based such termination on "specious, false and fraudulent allegations," terminated him solely because he refused to disclose trade secrets and slandered him in the presence of at least three other individuals. The numerous allegations of the present case go well beyond the single allegation in Neuharth. Whether these allegations "rise to the level of extreme and outrageous conduct required" is a question for the trier of fact, and plaintiff has CT Page 1339 stated a cause of action. The defendants' further argue that even if the conduct of Duboff was tortious they are not liable because "[t]he actor is never liable, for example, where he has done no more than to insist upon his rights in a permissible way, even though he is well aware that such insistence is certain to cause emotional distress." Peytan v. Ellis, 200 Conn. 243, 257-55
(1986), quoting 1 Restatement (second) of Torts (1965) Section 46, comment (g). The defendants' argument cannot be addressed on a motion to strike. This is more properly raised as a special defense. Plaintiff's allegations in the complaint must be accepted as true and construed in his favor. Mozzochi, supra, 491.
Plaintiff alleges that the defendants did not follow the procedure in the employment contract for a "without cause" termination and that there were no facts to support a "for cause" termination. Therefore, the defendants argument regarding privilege cannot be addressed at this stage of the proceedings. The plaintiff states a viable cause of action.
 E.
Defendants move to strike the sixth count on the ground that the plaintiff has not alleged that the defendant's conduct created a risk of bodily harm. They also seek to strike this count on the ground that this claim is barred by the Workers' Compensation Act, General Statute Section 31-275 et seq. Further, they claim that the allegations do not allow a recovery in negligence, and on the ground that emotional distress resulting from a breach of contract is not actionable.
The defendants claim that Montinieri v. Southern New England Telephone Co., 175 Conn. 337, 398 A.2d 1180 (1978) stands for the proposition that "defendant should have realized that its conduct involved an unreasonable risk of causing emotional distress and that distress, if it was caused, must result in illness or bodily harm." Montinieri actually states that defendant is liable if he "should have realized that its conduct involved an unreasonable risk of causing emotional distress and that that distress, if it were caused, might result in illness or bodily harm." Id. at 345 (emphasis added). Also, "recovery for unintentionally-caused emotional distress should not depend on proof of an ensuing bodily injury." Id.
The plaintiff, in paragraph 24 of the sixth count, alleges that defendant "should have realized" that its action in wrongfully terminating him in violation of the written employment agreement and slandering him in the presence of others involved an unreasonable risk of causing distress to the plaintiff. Plaintiff also claims to have "suffered serious mental and emotional harm" CT Page 1340 from defendant's actions.
It appears that the plaintiff's allegations do state a cause of action for negligent infliction of emotional distress.
Defendants also argue, however, that even if plaintiff has stated a claim of emotional distress, such claim is barred by the Workers' Compensation Act. The Act states that "[a]n employer shall not be liable to any action for damages on account of personal injury sustained by an employee arising out of and in the course of his employment . . . but an employee shall secure compensation for his employees as follow . . ." General Statute Section 31-284(a). Thus, if a claim for negligent infliction of emotional distress is covered by the Act, then granting the motion to strike is appropriate because "[i]t is axiomatic that an employee who has the right to benefits under the Workers' Compensation Act may not pursue an action against his employer for personal injuries." Fulco v. Norwich Roman Catholic Diocese, 4 Conn. L. Rptr. No. 2, 63, 65 (May 3, 1991, Mihalakos, J.).
There are no Supreme Court or Appellate Court decisions in Connecticut which have addressed this particular issue. The majority of Superior Court cases, of which there are many, have held that a claim for negligent infliction of emotional distress resulting from the termination of plaintiff's employment is barred by the exclusivity provisions of the Act because the temporal aspects of a person being in the course of his employment and being fired are really inseparable. Although plaintiff appears to have stated a claim for negligent infliction of emotional distress, such a claim is barred by the exclusivity provisions of the Workers' Compensation Act.
 F.
The defendants move to strike the seventh count of the complaint on the ground that the plaintiff does not allege any misrepresentation of fact, and on the statements were uttered with the intent to deceive and induce reliance thereon. Although plaintiff has objected to the motion to strike all the other counts of the complaint, he does not argue that the negligent misrepresentation count states a valid claim. In fact, plaintiff does not mention this count at all in his memorandum. Therefore, because plaintiff has not briefed the issue and it is conceded, the motion to strike is granted as to the seventh count.
 G.
The defendants move to strike the eighth count on the ground that the plaintiff has not alleged any bodily injury and on the ground that the claim is barred by the exclusivity provisions of CT Page 1341 the Workers' Compensation Act. Defendants argue that the plaintiff must have suffered bodily injury before a spouse can recover for loss to consortium. Mrs. Polyviou argues that a bodily injury is not necessary for recovery for loss of consortium.
The Connecticut Supreme Court first recognized the claim for loss of consortium in Hopson v. St. Mary's Hospital, 176 Conn. 485, 408 A.2d 260 (1979) where the court stated that "either spouse has a claim for loss of consortium shown to arise from a personal injury." Id. at 496. The term consortium includes such "intangible elements" as "`affection, society, companionship and sexual relations.'" Id. at 487 (citation omitted). Recovery for loss of consortium has not been limited to cases involving bodily injury, but has been allowed for bodily or personal injury. See e.g. Collins v. Gulf Oil Corp, 605 F. Sup. 1519 (D.Conn. 1985). Mrs. Polyviou, in paragraph 26 of the eight count, alleges that plaintiff suffered "severe physical, mental and emotional distress" as a result of defendants' actions. Accepting these allegations as true, this court could state a claim for a loss of "affection, society, companionship, or sexual relations."
Defendants also argue that Mrs. Polyviou's claim should be stricken because her claim derives from plaintiff's claims, and the plaintiff's claims are barred by the exclusivity provisions of the Workers' Compensation Act. Only one of plaintiff's claims is based on negligence and hence barred by the Workers' Compensation Act; there are still other presumably valid intentional tort claims.
 III.
In summary, based on the foregoing, the motion to strike counts two, three, four, five and eight is denied, and the motion to strike counts six and seven is granted.
SANTOS, J.