[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
On March 21, 1995, the plaintiffs, Donald and Darlene Shpak, filed a revised complaint against the defendants, Dan Beard, Inc., Daniel Beard, Sr., and Daniel Beard, Jr., for injuries allegedly sustained on July 21, 1993, during the course of the plaintiff's employment. The plaintiffs allege that Donald Shpak was an employee of Dan Beard, Inc. and was responsible for the general operation of the wet plant, which included lubricating the primary and secondary gears of the no. 1 concrete sand screw. According to the plaintiffs' complaint, on July 21, 1993, Donald Shpak was lubricating the concrete sand screw when "his hand came into contact and was drawn into the moving gears causing amputation of three fingers." CT Page 5256-KKK
The plaintiffs' revised complaint consists of six counts. In the first count the plaintiffs allege that Donald Shpak's injuries "were caused as a direct and proximate result of the reckless or serious misconduct of the defendants Daniel Beard, Sr., Daniel Beard, Jr., and/or Dan Beard, Inc., its agents, servants and/or employees." As a direct and proximate result of the alleged "reckless or serious misconduct," the plaintiffs claim that Donald Shpak sustained "a severe crushing amputation of his right hand and wrist resulting in amputation to fingers no. 3, 4, and 5 with limitations to no. 2 finger and thumb. He also sustained injuries to his lower back, all of which are or are likely to be permanent in nature." In count two, the plaintiff, Darlene Shpak, seeks damages for the loss of consortium of her husband, Donald Shpak, as a result of the damages alleged in count one. The allegations in counts three and six are identical in all respects to count two. Count four is directed at Daniel Beard, Sr. and seeks damages for injuries allegedly caused by his negligent misconduct. Finally, count five is directed at Daniel Beard, Jr., and seeks damages for injuries allegedly caused by his negligent misconduct. The allegations of negligence in counts four and five are essentially identical to the allegations of recklessness or serious misconduct in count one. The plaintiffs now seek monetary as well as punitive damages.
On June 5, 1996, the defendants filed a motion to strike counts one through six of the plaintiffs' first revised complaint on the grounds that: (1) the claims against the defendants are barred as a matter of law pursuant to General Statutes §31-284 (a), the exclusivity provision of the Workers' Compensation Act; (2) the plaintiff has failed to allege that the defendants intentionally or willfully caused injury to the plaintiff in the manner plead; and (3) a derivative claim for loss of consortium is not a legally recognized cause of action in an intentional torts claim. In support of this motion, the defendants submitted a memorandum of law. On July 12, 1996, the plaintiff filed an objection to the defendants' motion along with an opposing memorandum of law.
"The purpose of a motion to strike is to contest . . . the legal sufficiency of the allegations of any complaint . . . to state a claim upon which relief can be granted. In ruling on a motion to strike, the court is limited to the facts alleged in the complaint. The court must construe the facts in the complaint CT Page 5256-LLL most favorably to the plaintiff." (Internal quotation marks omitted.) Novametrix Medical Systems, Inc. v. BOC Group, Inc.,224 Conn. 210, 214-15, 618 A.2d 25 (1992). A motion to strike "does not admit legal conclusions or the truth or accuracy ofopinions stated in the pleadings." (Emphasis in original.)Mingachos v. CBS, Inc., 196 Conn. 91, 108, 491 A.2d 368 (1985). "If facts provable in the complaint would support a cause of action, the motion to strike must be denied." Waters v. Autuori,236 Conn. 820, 826, ___ A.2d ___ (1996). "A motion to strike is properly granted if the complaint alleges mere conclusions of law that are unsupported by the facts alleged." Novametrix MedicalSystems v. BOC Group, Inc., supra, 224 Conn. 215.
In their supporting memorandum, the defendants argue that the plaintiffs' claims are barred by General Statutes § 31-284
(a), the exclusivity provision of the Workers' Compensation Act, and that the plaintiffs have failed to state a claim under any exceptions to the exclusivity rule. According to the defendants, the plaintiff can only pursue a claim against his employer where the employer has committed an intentional act. Defendants' Memorandum, p. 5, citing Mingachos v. CBS, Inc., supra, 196 Conn. 91;Jett v. Dunlap, 179 Conn. 215, 425 A.2d 1263 (1979). The defendants argue that because there are no allegations in the plaintiffs' complaint of willful or intentional behavior, the plaintiffs have failed to state a cause of action. Furthermore, the defendants claim that because a loss of consortium claim is derivative, this claim must fail along with the first count. Even if the first count were to fit within the exception to the exclusivity rule, the defendants argue that the loss of consortium claim must fail because such claims are limited to instances where the injured spouse's cause of action sounds in negligence. Defendants' Memorandum, p. 7, citing Hopson v. St.Mary's Hospital, 176 Conn. 485, 496, 408 A.2d 260 (1979).
In their opposing memorandum, the plaintiffs concede that the claims in counts three, four, five and six are barred under General Statutes § 31-284 (a). Accordingly, the defendants' motion to strike is granted as to counts three through six. The plaintiffs argue, however, based on the holding in Suarez v.Dickmont Plastics Corp., 229 Conn. 99, 639 A.2d 507 (1994), that an exception to the exclusivity provision of the Worker's Compensation Act exists where "(1) the employer has committed an intentional tort or (2) where the employer has engaged in willful or serious misconduct." According to the plaintiffs, although wilful misconduct and reckless misconduct are not equivalents of CT Page 5256-MMM each other, "in their resultant they are alike in their seriousness and gravity, and the law subjects whoever is guilty of either form of misconduct to like rules and visits upon each a like liability." Plaintiffs' Memorandum, p. 9, quoting Bordonarov. Senk, 109 Conn. 428, 431-32, 147 A. 136 (1929). In addition, the plaintiff argues that a party has a claim for loss of consortium even though the underlying allegations may sound in recklessness rather than negligence. Plaintiffs' Memorandum, p. 12, citing Patient v. Stokes, Superior Court, Judicial District of Hartford-New Britain at New Britain, Docket No. 470414 (January 30, 1996, Arena, J.).
"The purpose of the worker's compensation statute is to compensate the worker for injuries arising out of and in the course of employment, without regard to fault, by imposing a form of strict liability on the employer." Jett v. Dunlap, 179 Conn. 215,217, 425 A.2d 1263 (1979). General Statutes § 31-284 (a) provides in pertinent part: "An employer shall not be liable to any action for damages on account of personal injury, sustained by an employee arising out of and in the course of his employment or on account of death resulting from personal injury so sustained. . . ." The Connecticut Supreme Court has consistently "interpreted the exclusivity provision of the act, General Statutes § 31-284 (a), as a total bar to common law actions brought by employees against employers for job related injuries with one narrow exception that exists when the employer has committed an intentional tort or where the employer has engaged in wilful or serious misconduct." (Emphasis added.) Suarez v.Dickmont Plastics Corp., 229 Conn. 99, 106, 639 A.2d 507 (1994). The exception has been expanded slightly by including within the definition of "intentional torts" conduct which is substantially certain to result in the employee's injuries — an employer may be liable for damages beyond those contemplated by the Workers' Compensation Act when the employer "desires to cause [the] consequences of his act, or . . . believes that the consequences are substantially certain to follow from it." (Emphasis added.)Suarez v. Dickmont Plastics Corp., supra, 229 Conn. 108. "The `substantial certainty' test provides for the `intent to injure' exception to be strictly construed and still allows for a plaintiff to maintain a cause of action against an employer where the evidence is sufficient to support an inference that the employer deliberately instructed an employee to injure himself." (Internal quotation marks omitted.) Id., 109-10.
"[I]ntent refers to the consequences of an act. . . . A CT Page 5256-NNN result is intended if the act is done for the purpose of accomplishing such a result or with knowledge that to a substantial certainty such a result will ensue." (Citation omitted; internal quotation marks omitted.) Id., 108. "Both the action producing the injury and the resulting injury must be intentional. . . . The intentional injury aspect may be satisfied if the resultant bodily harm was the direct and natural consequence of the intended act." (Citations omitted; internal quotation marks omitted.) Id., 109. "In terms of intentional tort then, the use of the word `intent' in allegations is not a talisman that can change the allegations into colorable claims of true intentional torts. . . . Nor is it any more so with the allegations of a `wilful' act. . . ." (Citations omitted; internal quotation marks omitted.) Mingachos v. CBS, Inc., supra,196 Conn. 101-02. "To bypass the exclusivity of the act, the intentional or deliberate act or conduct alleged must have been designed to cause the injury that resulted." Id., 102.
The issue then in the present case is whether the plaintiff has alleged facts sufficient to establish that the defendant's "conduct was substantially certain to result in injury." Suarezv. Dickmont Plastics Corp., supra, 229 Conn. 110.
In Suarez, the plaintiff alleged that he had been severely and permanently injured while working for the defendant "when, while attempting to clear hot molten plastic out of a plastic molding machine, two of his right hand fingers became caught in the machine and were partially amputated." Id., 101. The plaintiff alleged that his injuries "were caused by the defendant's wilful and serious misconduct. The plaintiff further alleged, inter alia, that the defendant: (1) always required the plaintiff and other employees to clean the plastic molding machine while it was in operation; (2) refused to allow the plaintiff or other employees to use safer cleaning methods; and (3) refused to equip the machine with a protective cover or other device in order to prevent injuries to persons operating or cleaning it." Id. The defendant moved for summary judgment claiming that, "in the absence of proof by the plaintiff that the employer intended to injure the plaintiff, the exclusive remedy provisions of the act barred the plaintiff's claim." Id., 101-02.
The court in Suarez concluded that "a jury could reasonably infer, from all the circumstances viewed in the light most favorable to the plaintiff, that the defendant's conduct constituted more than a mere failure to provide appropriate CT Page 5256-OOO safety or protective measures, and that the plaintiff's injury was the inevitable and known result of the actions required of him by the defendant." Id., 111. Accordingly, the court held that there was "a genuine issue of material fact as to whether the plaintiff's injury was `substantially certain' to follow from his employer's conduct so as to satisfy the narrow exception to the exclusivity provisions of the act and to allow the plaintiff to pursue his common law remedy in a trial." Id. 100-01.
The allegations in the present case are distinguishable fromSuarez, where the employer allegedly required the plaintiff to engage in unsafe conduct and threatened to fire him if he used safer methods, and is essentially analogous to Mingachos v. CBS,Inc., supra, 196 Conn. 111-12, in which the court granted the defendants' motion for summary judgment where the plaintiff alleged that his employer was aware of hazardous conditions and that its failure to correct these conditions or warn its employees was "intentional, malicious, and in willful and wanton disregard of the health of the plaintiff's decedent." In the present case, the plaintiffs alleged that the defendants were reckless in one or more of the following respects: "a. They knew or should have known that while the sand screw machinery was in operation, employees, specifically including Donald Shpak, were lubricating the machinery; b. They failed to correct the employees['] unsafe work practice of manually lubricating moving parts; c. They failed to provide guards on moving machine parts that were within seven feet of a work area; d. They knew or should have known that employees entered the work area described for the purpose of lubricating the moving gears several times a week and failed to take corrective action to stop the practice; [and] e. With knowledge of employees entering the work area described above for lubricating purposes several times a week, they failed to provide any warning to the employees."
"Alleged misconduct deemed to be `reckless,' . . . differs from intentional misconduct. While an act to be reckless must be intended by the actor, the actor does not intend to cause the harm which results from it. . . . It is enough that he realizes or, from facts which he knows, should realize that there is a strong probability that harm may result, even though he hopes or even expects that his conduct will prove harmless. However, a strong probability is a different thing from a substantialcertainty without which he cannot be said to intend the harm in which his act results." (Citation omitted; internal quotation marks omitted; emphasis in original.) Mingachos v. CBS, Inc.,
CT Page 5256-PPP supra, 196 Conn. 103.
The plaintiffs have failed to allege any intentional conduct on the part of the defendants that created a "substantial certainty" of injury to the plaintiffs so as to satisfy the narrow exception to the exclusivity provision of the Workers' Compensation Act. Instead, the plaintiffs have alleged in the first count that the defendants were negligent, or at most reckless, in allowing their employees to engage in unsafe practices, failing to correct such unsafe practices and failing to provide any warning to their employees. "[T]he mere knowledge and appreciation of a risk, short of substantial certainty, is not the equivalent of intent. The defendant who acts in the belief or consciousness that he is causing an appreciable risk of harm to another may be negligent, and if the risk is great his conduct may be characterized as reckless or wanton, but it is not classed as an intentional wrong. In such cases the distinction between intent and negligence obviously is a matter of degree. Apparently the line has been drawn by the courts at the point where the known danger ceases to be only a foreseeable risk which a reasonable man would avoid, and becomes a substantial certainty." (Internal quotation marks omitted.) Mingachos v. CBS,Inc., supra, 196 Conn. 103. "[T]he common-law liability of the employer cannot, under the almost unanimous rule, . . . be stretched to include accidental injuries caused by the gross, wanton, wilful, deliberate, intentional, reckless, culpable, or malicious negligence, breach of statute, or other misconduct of the employer short of genuine intentional injury." (Internal quotation marks omitted.) Id., 108. Accordingly, the plaintiffs' allegations do not fall within the exception to the exclusivity provision of the Workers' Compensation Act for intentional torts or willful and serious misconduct, and, therefore, that the defendants motion to strike count one of the revised complaint is granted.
"The term `consortium' is usually defined as encompassing the services of the wife, the financial support of the husband, and the variety of intangible relations which exist between spouses living together in marriage. . . . These intangible elements are generally described in terms of affection, society, companionship and sexual relations." (Citation omitted; internal quotation marks omitted.) Hopson v. St. Mary's Hospital, 176 Conn. 485,487, 408 A.2d 260 (1979). "Any tort causing direct physical injury to one spouse will give rise to a claim for loss of consortium by the other." W. Prosser W. Keeton, Torts (5th Ed. CT Page 5256-QQQ 1984) § 125, p. 932. A claim for loss of consortium is derivative of the claim on behalf of the injured spouse. "[B]ecause a consortium action is derivative of the injured spouse's cause of action, the consortium claim would be barred when the suit brought by the injured spouse has been terminated by settlement or by an adverse judgment on the merits." Hopson v.St. Mary's Hospital, supra, 176 Conn. 494). Where the injured spouse's "claim is barred, the derivative claim of loss of consortium is also barred." Murray v. Commissioner ofTransportation, 31 Conn. App. 752, 757, 626 A.2d 1328 (1993).
Because Donald Shpak's claim is barred by the exclusivity provision of the Workers' Compensation Act, General Statutes § 31-284 (a), Darlene Shpak's derivative claim for loss of consortium is barred as well. Accordingly, the defendants' motion to strike count two is also granted.
Based on the foregoing, the defendants' motion to strike is granted as to all six counts of the plaintiffs' revised complaint.
Zoarski, J.