PATRICIA HOPSON ET AL. *v.* ST. MARY'S HOSPITAL ET AL.

COTTER, C. J., LOISELLE, BOGDANSKI, LONGO and PETERS, Js.

Argued November 14, 1978—decision released January 23, 1979

*Stephen I. Traub,* with whom, on the brief, was *Donald Snow,* for the appellants (plaintiffs).

*Margaret J. Berthold,* with whom, on the brief, was *Anthony M. Fitzgerald,* for the appellee (named defendant).

*Frederick W. Christie,* for the appellee (defendant Charles Larkin, Jr.).

BOGDANSKI, J. The plaintiffs, Edward and Patricia Hopson, husband and wife, brought a malpractice action against the defendants, St. Mary's Hospital and Charles Larkin, Jr., a physician, wherein they sought to recover damages for injuries allegedly sustained by the wife during surgery. In the complaint Edward Hopson also claimed that because of the defendants' negligence he was deprived of the love, affection and consortium of his wife, Patricia Hopson. The defendants each demurred to that portion of the complaint, alleging that no action for loss of consortium is recognized in Connecticut. From the judgment of the court rendered on the demurrers sustained[1] the plaintiffs have appealed to this court.

The plaintiffs' appeal requires this court to decide whether the courts of this state will continue to adhere to the rule established in the case of *Marri v. Stamford Street R. Co.,* 84 Conn. 9, 78 A. 582 (1911), to the effect that a married person whose spouse has been injured by the negligence of a third party has no cause of action for loss of consortium.

---

[1] The trial court, relying on the case of *Marri v. Stamford Street R. Co.,* 84 Conn. 9, 78 A. 582 (1911), ruled that in Connecticut damages for loss of consortium caused by injuries negligently inflicted by a third party cannot be recovered by the uninjured spouse.

As will appear, we have concluded that the reasoning which led to the decision in *Marri* is no longer applicable and that this decision should now be overruled.

## I

The term "consortium" is usually defined as encompassing the services of the wife, the financial support of the husband, and the variety of intangible relations which exist between spouses living together in marriage. Prosser, Torts (4th Ed. 1971) § 124, pp. 881–82. These intangible elements are generally described in terms of "affection, society, companionship and sexual relations." Comment, "The Action for Loss of Consortium in New Mexico," 2 N. Mex. L. Rev. 107, 108 (1972). These intangibles have also been defined as the "constellation of companionship, dependence, reliance, affection, sharing and aid which are legally recognizable, protected rights arising out of the civil contract of marriage." *Brown* v. *Kistleman*, 177 Ind. 692, 98 N.E. 631 (1912); Lippman, "The Breakdown of Consortium," 30 Colum. L. Rev. 651 (1930); Pound, "Individual Interests in the Domestic Relations," 14 Mich. L. Rev. 177 (1916); Holbrook, "The Change in the Meaning of Consortium," 22 Mich. L. Rev. 1 (1923).

The action for loss of consortium developed at common law in the context of suits by the husband for damages stemming from interference with the marital relationship. See 3 Blackstone, Commentaries, pp. 138–40. Interference with the husband's rights to his wife's services or society, whether of an intentional or negligent nature, gave rise to a cause of action based on the husband's quasi-proprietary interest in his wife. Rosenberg, "Negligently Caused Loss of Consortium — A Case for Recognition as a Cause of Action in Connecticut,"

2 Conn. L. Rev. 399, 400 (1969). Under the common law, a wife had no legal claim to the services or society of her husband, the sole duty of the husband being to support the wife. As a result it was generally thought that an injury to the husband could not cause the breach of any duty owing to the wife and the wife was therefore afforded no right of recovery for loss of consortium at common law.

By the nineteenth century, the decisions began to emphasize the "services" aspect of the husband's consortium interest. The precise activities encompassed by the term "services" were, however, never uniformly defined. In Connecticut, the courts generally interpreted it to mean those services "which found their expression at the domestic fireside, and in all manner of aid, assistance and helpfulness in all the relations of domestic life." *Marri* v. *Stamford Street R. Co.*, supra, 12. During this era the "sentimental" aspects of consortium were either not considered or were held to be too subsidiary for their loss to be considered. See Brett, "Consortium and Servitium, A History and Some Proposals," 29 Austl. L.J. 321, 394 (1955).

The Married Women's Acts enacted in the mid-nineteenth century freed married women from the disabilities attaching to their status under the common law. Women, though married, were given the right to sue and be sued in their own right and "[t]he question naturally arose whether . . . the husband's actions . . . for loss of consortium should be ruled obsolete or whether . . . they should be held to survive in substantial dimension and be complemented by analogous remedies extended to the wife. . . . It was held very widely that husbands still retained their consortium rights . . . .

And it was generally held that the new status of married women implied at least some rights of consortium on their part." *Diaz* v. *Eli Lilly & Co.*, 364 Mass. 153, 155–56, 302 N.E.2d 555 (1973).

While married women generally gained the right to recover for loss of consortium in cases involving intentional torts, most courts continued to deny a wife's right to recover for loss of consortium when the injury which deprived the wife of her husband's society and companionship was negligently inflicted by a third party. *Lockwood* v. *Wilson H. Lee Co.*, 144 Conn. 155, 128 A.2d 330 (1956); *Feneff* v. *New York Central & Hudson River R. Co.*, 203 Mass. 278, 89 N.E. 436 (1909).

It was not until a century after the Married Women's Acts that the landmark case of *Hitaffer* v. *Argonne Co.*, 183 F.2d 811 (D.C. Cir. 1950), cert. denied, 340 U.S. 852, 71 S. Ct. 80, 95 L. Ed. 624 (1950), was decided. In *Hitaffer*, the Court of Appeals of the District of Columbia Circuit held that a wife has a cause of action for loss of consortium due to an injury negligently inflicted upon her spouse by a third party. In that opinion, consortium was defined as a "conceptualistic unity," which combines inseverably both "sentimental" and "service" elements. In the years since *Hitaffer*, many states have liberalized their views on consortium, and the weight of authority as to a wife's recovery for loss of consortium when her husband is injured by the negligent act of a third party has dramatically changed. Several states have reversed their earlier positions and have permitted recovery by a wife, even though prior decisions had held that neither party could bring a cause of action for loss of consortium. *Rodriquez* v. *Bethlehem Steel*

*Corporation,* 115 Cal. Rptr. 765, 525 P.2d 669, 675 (1974); *Diaz* v. *Eli Lilly & Co.,* 364 Mass. 153, 302 N.E.2d 555 (1973); *Montgomery* v. *Stephan,* 359 Mich. 33, 101 N.W.2d 227 (1960).

## II

Connecticut's law on consortium rests almost entirely on the 1911 decision in *Marri* v. *Stamford Street R. Co.,* supra. In that case, the plaintiffs, Mr. and Mrs. Emil Marri, were injured in a collision with a trolley car and brought suit seeking damages for the personal injuries sustained in the accident. The complaint also included a claim by the plaintiff husband for damages for loss of consortium. On appeal, this court denied the husband's claim for the loss of consortium and held that the recovery[2] of the husband must be limited to the expenses which he had incurred as a result of the injuries to his wife.

The decision in *Marri* was based largely upon the changes in the common law brought about by the enactment in Connecticut of the Married Women's Act (Public Acts 1877, chapter 114). The court in *Marri,* however, unlike the courts in most other jurisdictions, concluded that the effect of the Married Women's Act was not to extend to the wife a cause of action for consortium, but rather to render obsolete the husband's cause of action in cases involving negligently inflicted injury to the wife. The court observed (p. 19) that in a consortium claim based on negligently inflicted physical injury to the wife, the predominant factor of damages was the "loss of service and the capacity for service resulting from diminished or destroyed ability to serve," whereas in actions arising from intentional torts such as criminal conversation or alienation of

---

[2] Other than for the injuries to himself.

affections, the destruction or impairment of conjugal affection, society or companionship would be the predominant elements of the husband's loss. The court concluded that, inasmuch as the real basis for recovery in cases involving negligent torts was the loss of services, and since the wife was now permitted to recover in her own name for any impairment of her capacity for service, her remedy should be exclusive, and that the husband should therefore be limited to recovering the expenses which he had incurred by reason of the negligent injury to his wife. The *Marri* court also expressed concern about the remote and indirect nature of the consortium injury and the possibility of double recovery. Examination of the reasoning in *Marri* reveals that the decision rested primarily upon distinctions then drawn between the sentimental and service aspects of claims for loss of consortium.

Over the years the *Marri* decision has been the subject of criticism by scholars and courts alike. See *Hoekstra* v. *Helgeland*, 78 S.D. 82, 98 N.W.2d 669 (1959) ; *Diaz* v. *Eli Lilly & Co.*, supra; *Rodriquez* v. *Bethlehem Steel Corporation*, supra. *Marri* has often been criticized for ignoring the possibility that a spouse might be more seriously deprived of the "sentimental" advantages of marriage as the result of a physical injury to the other spouse than as the result of intentional wrongdoing by a third party, as in alienation of affections. As the court in *Hoekstra* observed (p. 106): "[T]ime may erase the mental aberration, but may not restore the physical ability to furnish the elements of consortium." The *Marri* decision has also been attacked for failing to consider loss of companionship and society as recoverable elements of damages. Harper & James, Torts (1956) § 8.9, p. 638.

In *Hitaffer*, the distinction between the sentimental and service aspects of consortium, relied on by the court in *Marri*, was rejected. The court in *Hitaffer* emphasized (p. 814) that consortium is a "conceptualistic unity" which inseparably combines both the sentimental and services elements of the marital relation. *Hitaffer* reasoned that there was no rational basis for holding that in cases of negligent injury to a spouse, recovery for loss of consortium should depend upon whether there was a loss of services. The court concluded that although the complaint in that case had alleged both loss of services and loss of conjugal affection "no distinct functions were intended," and that what was significant was the injury to the unity of the marital relation. Courts and commentators alike have found the reasoning of *Hitaffer* persuasive and have agreed that courts commit error when they attempt to distinguish between the different elements of the "conceptualistic unity" which is consortium.

## III

With respect to the matters of the indirect or remote nature of the consortium injury; see *Lockwood* v. *Wilson H. Lee Co.*, 144 Conn. 155, 128 A.2d 330 (1956); and the potential for double recovery, neither the authorities nor the courts have found these difficulties to be insurmountable. See *Diaz* v. *Eli Lilly & Co.*, supra; *Rodriquez* v. *Bethlehem Steel Corporation*, supra. The court in *Hitaffer*, for example, rejected a claim that the injury for loss of consortium is indirect, stating that "[i]nvasion of the consortium is an independent wrong directly to the spouse so injured," and results from a natural and continual sequence of events unbroken

by an intervening cause. *Hitaffer* v. *Argonne Co.*, supra, 815. Although disparagingly referred to as "sentimental" or "parasitic" damages, the mental and emotional anguish caused by seeing a healthy, loving, companionable mate turn into a shell of a person is undeniably a real injury. Moreover, an injury to one's spouse may turn a happily married man or woman into a lifelong nurse and deprive him or her of an opportunity of having children and of raising a family. To describe such a loss as "indirect" is only to evade the issue. *Millington* v. *Southeastern Elevator Co.*, 22 N.Y.2d 498, 239 N.E.2d 897 (1968).

In short, the effect of the *Marri* decision is to deny the existence of any harm where harm is most assuredly to be expected. It is a well-settled principle of law that a tortfeasor takes his victim as he finds him. Should the victim be married, it follows that the spouse may suffer personal and compensable, though not physical, injuries as a direct result of the defendant's negligence and that such injuries should not go uncompensated.

The difficulty of assessing damages for loss of consortium is not a proper reason for denying the existence of such a cause of action inasmuch as the "logic of [that reasoning] would also hold a jury incompetent to award damages for pain and suffering." *Millington* v. *Southeastern Elevator Co.*, supra, 507. The subjective states such as grief, fright, anxiety, apprehension, humiliation and embarrassment have long been viewed as genuine and deemed compensable under the concept of pain and suffering. *Diaz* v. *Eli Lilly & Co.*, supra, 165; *Millington* v. *Southeastern Elevator Co.*, supra,

507. The task of computing damages for a loss of consortium is no more difficult for a judge or jury than arriving at an award for pain and suffering.

Recent decisions have recommended that claims by spouses, whether for physical injuries or consortium losses, be joined in one action and tried before a single trier of fact. *Schreiner* v. *Fruit*, 519 P.2d 462 (Alas. 1974) ; *Thill* v. *Modern Erecting Co.*, 284 Minn. 508, 170 N.W.2d 865 (1969). In that way, the danger of improper verdicts will be minimized. For example, while a claim for loss of consortium could include as elements of damages loss of companionship, society, affection, sexual relations and moral support, the recovery in a particular case could be limited to the elements established in that case by means of instructions from the court describing to the jury those damages which are recoverable and those which are not. *Novak* v. *Kansas City Transit, Inc.*, 365 S.W.2d 539, 544 (Mo. 1963).

Moreover, because a consortium action is derivative of the injured spouse's cause of action, the consortium claim would be barred when the suit brought by the injured spouse has been terminated by settlement or by an adverse judgment on the merits. *Millington* v. *Southeastern Elevator Co.*, supra, 508. See also *Diaz* v. *Eli Lilly & Co.*, supra, 167. Thus a joinder of claims, together with proper instructions to the jury and close scrutiny of the verdicts, will be sufficient to minimize the potential for improper verdicts.

## IV

Having thus reexamined the decision in *Marri,* we find its reasoning no longer persuasive and its result unsound. We are confirmed in this view by

the movement of the law in other jurisdictions where, since 1950, a growing majority of courts have come to recognize a right of action for loss of consortium[3] in either spouse. Without attempting a count of the decisions, we may summarize the situation roughly as follows: The right of a husband to bring an action for loss of consortium has long been acknowledged in a substantial majority of the jurisdictions. The right of the wife, first confirmed in *Hitaffer* v. *Argonne Co.* (1950), and most recently in *Rodriquez* v. *Bethlehem Steel Corporation* (1974), *Diaz* v. *Eli Lilly & Co.* (1973), and *Hopkins* v. *Blanco*, 457 Pa. 90, 320 A.2d 139 (1974), has now been recognized in many jurisdictions. In certain jurisdictions the wife's right has been denied although the husband's right is still affirmed—a distinction of dubious validity and one which we will not accept. Only a few jurisdictions have followed our *Marri* case or another route and denied the right to recovery to both husband and wife. The Restatement of Torts (1938) § 693 recognized the husband's right. The Restatement (Second) of Torts will state that both the husband and wife have a right to recovery for loss of consortium on equal terms; the Restatement (Second) will also add the requirement that where possible the consortium claim must be joined with the claim for bodily injury.[4]

Our decision today does not drastically or radically change existing law, for in no serious way will an existing interest be impaired or an expectation

---

[3] The trend is described in Prosser, Torts (4th Ed. 1971) § 125, pp. 894–96.

[4] Tentative draft No. 14, 1969, Restatement (Second) of Torts, pp. 13–21; see also Proceedings, 46th Annual Meeting, 1969, American Law Institute, pp. 148–58, 162–63.

be disappointed or a reliance be defeated.[5] See *Fitzgerald* v. *Meissner & Hicks, Inc.*, 38 Wis. 2d 571, 578, 157 N.W.2d 595 (1968) (viewing any problem of insurance coverage as minimal); see also *Diaz* v. *Eli Lilly & Co.*, supra. As a matter of sound administration and fairness, however, we hold that where a spouse's claim for physical injuries has been concluded by judgment or settlement or the running of limitations prior to the coming down of this opinion, no action for loss of consortium arising from the same incident will be allowed, even if that action would not be otherwise barred by limitations.

Our decision overruling *Marri* and holding that either spouse has a claim for loss of consortium shown to arise from a personal injury to the other spouse caused by the negligence of a third person requires us to find that the trial court erred in sustaining the demurrers as to the claims for loss of consortium.

There is error, the judgment is set aside and the case remanded with direction to overrule the demurrers and then proceed according to law.

In this opinion the other judges concurred.

---

[5] There should be greater readiness to abandon an untenable position when the rule to be discarded may not be reasonably supposed to have determined the conduct of the litigants, and particularly when in its origin it was the product of institutions or conditions which have gained a new signficance or development with the progress of the years. Cardozo, The Nature of the Judicial Process, p. 151 (1901).