[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON PETITION FOR FINAL DECREE DISSOLVING THE MARRIAGE AND OBJECTION THERETO IN DOCKET NO. 233515
There are two files in this matter, one in which the husband is the plaintiff, a decree of legal separation was entered on June 26, 1987, and the plaintiff now seeks a dissolution; and the other in which the wife is the plaintiff and is seeking a decree of dissolution. The question presented is whether the parties, by their cohabitation beginning in April, 1990, have "resumed marital relations" so that the husband can no longer proceed to obtain a decree of dissolution following a decree of legal separation.
The parties were married on August 24, 1968. They were legally separated on June 26, 1987. A separation agreement was executed by the parties, submitted to the court, found to be fair and equitable by the court, ordered placed on file and orders entered in accordance therewith. In May, 1989, the parties stipulated to a modification in the manner in which alimony and support payments were to be made. On April 1, 1990, the parties entered into a new agreement which provided for a change in the handling of their finances, provided that they be "equal partners" and provided that neither of them was to incur any debt unless both were to agree. Some time in March, 1990, prior to April 1, the husband moved back into the family home, the exclusive possession of which was granted to the wife by the terms of their separation.
When the plaintiff husband moved back into the family home, he moved all of his things back into the house. He slept there and continues to sleep now in the master bedroom and, until May 15th or so, in the same bed with the defendant wife. Both parties agree, however, that there were no sexual relations.
Fortunately, our Supreme Court in the case of Mitchell v. Mitchell, 194 Conn. 312, 326 (1984), has decided some of the questions confronting the court in this case. In Mitchell it was held that a party may not proceed under the provisions of46b-65 (b) if the parties have resumed marital relations. See CT Page 4239 Practice Book 472.
There is no Connecticut case which defines "marital relations." However, the Connecticut Supreme Court defines consortium as "encompassing the services and/or the financial support of a spouse, and the variety of intangible relations which exist between spouses living together in a marriage." Champagne v. Raybestos-Manhattan, 212 Conn. 509, 553 (1988) (citing Hopson v. St. Mary's Hospital, 176 Conn. 485, 487
(1979); Kuhn v. Bridgeport Ambulance Service, 11 Conn. App. 179,182 (1979). "`These intangible elements are generally described in terms of affection, society, companionship and sexual relations.'" Champagne, supra, at 553. These intangibles have also been described as "dependence, reliance, affection, sharing and aid which are legally recognizable, protected rights arising out of the civil contract of marriage." Hopson v. St. Mary's Hospital, 176 Conn. 485, 487 (1979).
Using the decisions of our courts on the issue of consortium, it would appear that resumption of marital relations contemplates more than sexual relations and that the lack of sexual relations does not mean that there has been no resumption of marital relations. Query the number of happily married couples who by reason of illness, physical disability or other reasons who have no sexual relations?
Mr. Baiardi testified that he moved back in because he wanted to work toward a reconciliation, that he remained in love with Mrs. Baiardi, that he did want to reconcile, and that Mrs. Baiardi indicated she wanted to reconcile. Mrs. Baiardi testified that she intended to have a sincere reconciliation, that she had a sense of hope, that they slept in the same bed and "cuddled", that they had dinner together, went to church together and made a peace offering in church as a family, that they attended their daughter's graduation from middle school and attended a cousin's fiftieth birthday, and that they went for auto rides together. In her mind the marriage had resumed. She testified it was not too much different than before the legal separation when they were living together.
Counsel for Mrs. Baiardi has cited a North Carolina Supreme Court case to the following effect:
 ". . . when separated spouses who have executed a separation agreement resume living together in the home which they occupied before the separation, they hold themselves out as man and wife `in the ordinary occupation of the descriptive phrase.' Irrespective of whether they have resumed CT Page 4240 sexual relations, in contemplation of law, their action amounts to a resumption of marital cohabitation. . . ." Matter of Estate of Adamee, 291 N.C. 386, 393, 230 S.E.2d 541, 546 (1976); Murphy v. Murphy, 245 S.E.2d 693, 696 (N.C. 1988).
Based upon the evidence and the law, the court finds that the parties have resumed marital relations. The court sustains Mrs. Baiardi's objection to petition for a final decree and denies Mr. Baiardi's petition for a final decree dissolving the marriage since the parties have resumed marital relations since the date of the decree of legal separation, all in docket number FA86 0233515 S.
The court has set this matter down for further proceedings on June 28 and July 1, 1991.
EDGAR W. BASSICK, III, JUDGE