[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION RE MOTION TO STRIKE
I.
On December 20, 1988, the plaintiff, Lyle M. Kizina, was driving on I-84. His automobile was involved in an accident with cars driven by defendants Lynn K. Minier and Roger Martineau. CT Page 250
The plaintiffs filed this complaint on October 22, 1990. Plaintiff Lyle Kizina claims damages for his injuries. His spouse seeks damages for loss of consortium due to her husband's injuries. Counts 7, 8, 10, 11, 13, 14, 15, 16, 17, 19, and 20 of the complaint involve claims for damages for loss of consortium suffered by Lyle Kizina's children, Jason and Rebecca, as a result of their father's injuries.
The defendants have filed motions to strike the counts involving the loss of consortium suffered by Jason and Rebecca. Defendants argue that damages for loss of consortium are not properly recoverable by the children of an injured party in Connecticut.
On April 10, 1991, the plaintiffs filed a memorandum in opposition to the defendants' motions to strike. The plaintiffs argue that the time has come for the Connecticut courts to recognize the right and cause of action of a minor child for loss of parental consortium resulting from injuries sustained by the child's parent.
 II.
A motion to strike is the proper vehicle to challenge "the legal sufficiency of the allegations of any complaint. . .or of any one or more of the counts thereof, to state a claim upon which relief can be granted. . .". Connecticut Practice Book Section 152. Thus, if the Connecticut courts should not recognize a minor child's cause of action for loss of parental consortium resulting from injuries sustained by the parent, the defendants' motions to strike the counts pertaining to such claims must be granted. This is a case of first impression in that the Connecticut Supreme Court has never decided whether Connecticut should recognize a minor child's cause of action for loss of consortium of a negligently injured parent.
It will be helpful to briefly state the history of the development of the modern day cause of action of loss of consortium. Its origin was based in the property right a master was seen to have in his servant. When the servant was injured by a tort, the master could recover for the loss of the services of the servant. By 1619, this concept was applied to the marital relationship. The husband was entitled to recover for the loss of services of his tortiously injured wife, who, like the servant, owed her husband "services". No similar cause of action was recognized in favor of the wife. Like the servant, she was in a subordinate position and was owed no analogous services by her husband. W. Page Keeton et al, Prosser and Keeton on the Law of Torts, 931, (5th ed. 1984) [hereinafter Prosser]. CT Page 251
The notion of what constituted the services that the husband was owed was the first aspect of the consortium claim to evolve. Originally, the labor of the wife on behalf of the husband was the service that was owed. Eventually the concept was expanded to encompass sexual attention, society, and affection. Id.
The conflict between the inferior status imposed on women by the common law, and changing social norms, prompted the enactment in this country of Married Women's Acts. Married women were given the right to sue and be sued in their own right. Courts were then confronted with the question of what affect these laws, and the attendant changes in societal norms, had on the loss of consortium cause of action. The majority of courts extended women some measure of loss of consortium rights where their husbands were injured by intentional torts. Hopson v. St. Mary's Hospital,176 Conn. 485, 489-90.
Connecticut followed the minority approach. In Marri v. Stamford Street R. Co., 84 Conn. 9, (1905), the Supreme Court of Errors held that the affect of Connecticut's Married Women's Act was to render the husband's loss of consortium claim obsolete. Since the wife could sue in her own right, and since she could recover for any impairment of her loss of ability to render service, the husband's recovery should be limited to the expenses he incurred as a result of his wife's injury. Hopson, at 490-91.
The most significant modern development in the loss of consortium claim came in 1951. In Hitaffer v. Argonne Co.,183 F.2d 811 (D.C. Cir. 1950), cert. denied, 340 U.S. 852, the court held that a wife has a cause of action for loss of consortium due to an injury negligently inflicted upon her spouse by a third party. Since that decision, a large number of jurisdictions have adopted that rule. Hopson at 489. In 1979, the Connecticut Supreme Court, in Hopson v. St. Mary's Hospital, 176 Conn. 485, overruled Marri and adopted the Hitaffer approach.
Analogous to the cause of action based on loss of spousal consortium, and with a similar history, is the claim for loss of consortium based on the parent/child relationship. The father was deemed to have a possessory interest in the services of his child, as he had in the services of his wife or his servant. Thus he was entitled to recover the pecuniary value of these services if the child was tortiously injured. Theama by Bichler v. City of Kenosha, 344 N.W.2d 513, 514. Gradually, the father's loss of his child's love, care, and companionship were deemed recoverable. Id. Consistent with the change in women's status, jurisdictions began to recognize a mother's claim for her losses. Recognition of a parent's action for loss of a child's consortium is still distinctly a minority view. At present, only eleven jurisdictions recognize such a cause of action.[1]
CT Page 252
The recognition of a child's cause of action for loss of consortium of a tortiously injured parent is a very modern development. The failure of the courts to recognize such a cause of action was subject to learned criticism as early as 1916. Pound, Individual Interests in the Domestic Relations, 14 Mich. L. Rev. 177-185 (1916). Nonetheless, it was not until 1980 that Massachusetts, in Ferriter v. Daniel O'Connell's Sons,381 Mass. 507, became the first jurisdiction to recognize a child's claim. Since that decision, ten jurisdictions have followed suit.[2]
This court has analyzed the precedents and determined that the reasoning of the courts recognizing the child's cause of action is persuasive. These decisions have generally focused on analyzing, and refuting, the arguments advanced against such recognition. This court will adhere to that approach in the following discussion.
It has been argued that the recognition of a child's cause of action for loss of parental consortium is more properly a matter for legislative rather than judicial action. This argument ignores two key historical facts. First, it has always been the duty of the courts to adapt the common law to fit present circumstances. See, e.g., Theama, supra, at 518, 519. Second, the cause of action of loss of consortium was created and refined by the courts. The rules denying a child's recovery for loss of parental consortium were court made rules. Thus it is appropriate for the courts to abandon the rules when they no longer fit modern conditions. Id.
Opponents of recognition maintain that it will result in increased insurance costs and thus burden society as a whole. A related argument is that recognition will multiply litigation. To these arguments, it must be stated that insurance practices must adapt themselves to the law, and not the law to insurance practices. See, e.g. Norwest v. Presbyterian Intercommunity Hospital, 293 Or. 543, 552. And if recognition of this cause of action causes more injured parties to seek redress in the courts, this does not argue against such recognition. It is the duty of the courts to redress injuries, and it is expected that injured parties should look to the courts for assistance. Hay v. Medical Center Hospital of Vermont, 496 A.2d 939 (Vt. 1985). Finally, the social costs, including increased insurance premiums and/or judicial costs, are offset by the benefits that the child and society as a whole, will receive if an award of damages assists a child in adjusting to his or her loss and becoming a productive adult. Theama, supra at 521.
Those whose oppose recognition have argued that such claims are so subjective that juries could not be expected to evaluate CT Page 253 them in a consistent and/or principled way. They also advance the related argument that, as a practical matter, juries presently include the value of the child's loss of consortium in the recovery they allow the injured parent. But courts and juries face, and, we are confident, surmount, such problems every day. The losses a child suffers as a result of a parent's injuries are no more ephemeral or indeterminate than claims for "pain and suffering" or "emotional distress", or indeed for loss of spousal consortium. This problem as well the possibility that both child and injured parent will recover the value of the child's loss of consortium, can be overcome by the requirement that the elements of damages be specifically and explicitly articulated and argued, coupled with the courts properly instructing the jury. Berger v. Weber, 303 N.W.2d 424, 427 (1981).
A final argument advanced against recognition of a child's claim for loss of consortium is that the love, companionship, and guidance of the injured parent are irreplaceable. Awarding children money for such losses will not replace what has been lost, but will only result in the child being "unusually wealthy". Borer v. American Airlines, 19 Cal.3d 441 (1977). The same can be said for many injuries for which money is awarded. The alternative is to allow the injury to go uncompensated. Theama, supra, at 520. Further, the money the child receives as a result of a loss of consortium claim may permit the child to obtain professional counseling or other assistance to help him or her deal with the loss. Id.
The history of the loss of consortium claim articulated above demonstrates that it has, albeit in uneven advances, tracked changing economic conditions and the attendant changes in societal attitudes about the nature of the relationships implicated. The law involving the parent child relationship, and the state's interest therein, has changed greatly since the child was viewed as merely another servant in the household of the paterfamilias.
The Connecticut Supreme Court did not hesitate to recognize the loss of consortium claims of spouses when it determined that the reasoning behind its longstanding Marri rule was "no longer persuasive". Hopson, supra at 494. The court `cased its decision in part on the "movement of the law" in favor of recognition of spousal consortium. Id., at 495. The movement of the law is clearly in the direction of recognition of a child's claim for damages for loss of consortium resulting from a parent's injury, and this court's recognition of the cause of action is consistent with the principles articulated in Hopson.
For the foregoing reasons, the defendants' motions to dismiss the Counts 7, 8, 10, 11, 13, 14, 15, 15, 17, 19 and 20 are denied. CT Page 254
SANTOS, J.
ENDNOTES