[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON DEFENDANTS MOTIONS TO STRIKE
In this case the plaintiffs' mother was admitted to the hospital for delivery of her son. The claim is made that the defendant doctor and agents of the defendant hospital failed to provide adequate medical services and the child suffered severe injury. This suit was commenced and several of the counts represent claims by the father and mother of the child. Motions to strike various counts of each of their claims have been filed and the court will discuss the issues raised by the motions in one memorandum of decision.
The purpose of a motion to strike is to test the legal sufficiency of the allegations of a complaint and one of its recognized purposes is to test whether our state is "ready to recognize some newly emerging ground of liability", DurhamAgveduct Co. v C.E. Burr R. Co. 8 Conn. L Trib. #13 p. 11, 12 (1981) see 1 Stephenson, Connecticut Civil Procedure § 116
1.
Filial Consortium
In the motion to strike directed toward the Fifth, Eighth and the Eleventh and Fourteenth Counts the defendants claim they are legally insufficient since our state does not recognize claims for loss of consortium by a parent for injuries sustained by a minor child. CT Page 7524
There is a split of authority on this issue. Several cases have rejected claims of so-called loss of parental consortium and filial consortium. Some of those cases areShattuck v. Gulliver 40 Conn. Sup. 95 (1984), Toscano ppa etal v. Sinsteden et al, 8 CSCR 372 (1993), Hazo et al v. Sousaet al, 7 Conn. L Rptr. 62 (1992), Reardon et al v. MiddlesexHospital et al, 7 Conn. Rptr. 299 (1992) Clark v. Romeo,561 F. Sup. 1209 (D.Conn., 1983), also see Giatrelis et al v.Kraus et al, 8 Conn. L. Rptr. 560 (1993), Williams et al v.Picard, 8 Conn. L. Rptr. 173 (1993), Gridley v. Sunshine OilCo., 10 Conn. Rptr. 20 (1993). Cases permitting such recovery are Sliney ppa v. Denisanko, 8 Conn. L. Rptr. 887 (1993),Condron v. Pollak, 1993 W. L. 498 900 (1993), Beckwith v.Akus, 8 Conn. L. Rept. 487 (1993), Kizna v. Minier,5 Conn. L. Rptr. 481 (1991).
No appellate court in our state has addressed this question. There is dicta in the main body of the opinion isMaloney v Lesniak 17 Conn. App. 130, 141 (1988) to the effect that "the right to consortium is said to arise out of the civil contract of marriage and as such does not extend to the parent child relationship. " But footnote 7 on the same page makes clear that the court is not deciding the issue and recognizes it has not been decided. In any event as noted the language is dicta. A trial court is not bound by dicta and if after analysis it disagrees with the dicta it may hold against the dicta.
The cases in other jurisdictions are collected in an excellent article entitled "Parent's right to recover for loss of consortium in connection with injury to child" at 54 A.L.R. 4th 112. The Restatement (Second) of Torts recognizes a claim for spousal consortium but not for parental or filial consortium (cf §§ 603, 703, 707(a). It is also interesting to note that although California first recognized recovery for bystander emotional distress, Dillon v. Lego, 441 P.2d 912
(Cal. 1968) it does not allow a parent's claim for loss of filial consortium Baxter v. Superior Court, 563 P.2d 871
(Cal. 1977). Similarly New Jersey accepts the first theory of recovery Portee v. Jaffee, 417 A.2d 571 (NJ, 1980) but not the latter, Brennan v. Biber, 225 A.2d 742, aff'd239 A.2d 261 (1968).
Most though not all of the Connecticut cases just cited involve claims of loss of parental consortium as opposed to a CT Page 7525 claim of a loss of filial consortium. These claims raise different issues but courts that reject either theory seem to rely on their conclusion that our appellate courts have not recognized these causes of action. There is an older case,Taylor v. Keefe, 134 Conn. 156, 158 (1947) that upheld a demurrer to a claim by a child against one who the child claimed alienated him from the affections of his mother. This case was decided long before Hopson v. St. Mary's Hospital,176 Conn. 485 (1979) and again did not involve a claim of loss of filial consortium. In any event a motion to strike like the common law demurrer can be used to "test whether or not Connecticut is ready to recognize some newly emerging ground of liability," Connecticut Civil Procedure, Stephenson, Vol. I § 116 page 470, Hammon v. Diglianti, 148 Conn. 710 (1961),Carey v. Statewide Finance Co., 3 Conn. Cir. 716 (1966).
The reasoning of the court in Sliney v. Denisanko supra is very persuasive and this court adopts it. That court pointed to the unique relationship of parent and child and the interest of a parent in his or her child as a fundamental constitutional right. The Sliney court referring to Hopson v.St. Mary's Hospital supra reasoned that: "It is difficult to rationalize why rights protected by the legal contract of marriage should give rise to a consortium claim while rights (parental) that are constitutionally protected should not."[1]
My basic problem with the motion to strike directed toward these counts rests on an analysis of Hopson v. St.Mary's Hospital, supra and its underlying reasoning. In Clarkv. Romeo, supra, Judge Zampano is correct in a technical sense that the language of Hopson does not require the extension of the recognition of the loss of spousal consortium to permit recovery for the type of claim which is being made here. But the reasoning Hopson relied on makes it difficult to see how our state can logically recognize claims of loss of spousal consortium but not of parental loss of filial consortium.
In its motion to strike the defendant raised the technically true argument that the consortium interest protected in Hopson was based on the spousal relationship. But that provides no a priori reason to not provide recovery for damage to other relationships where similarly important interests are at stake.
Besides Hopson ultimately did not rest on technical CT Page 7526 definitions of the marriage relationship, its rights and legal obligations. The real basis of its ruling is set forth at 176 Conn. page 493:
 Although disparagingly referred to as "sentimental" or "parasitic" damages, the mental and emotional anguish caused by seeing a healthy, loving, companionable mate turn into a shell of a person is undeniably a real injury. Moreover, an injury to one's spouse may turn a happily married man or woman into a lifelong nurse and deprive him or her of an opportunity of having children and of raising a family . . .
 In short, the effect of the Marri decision is to deny the existence of any harm where harm is most assuredly to be expected. It is a well-settled principle of law that a tortfeasor takes his victim as he finds him."
The same emotional and mental anguish is caused to a parent by seeing what might have been a healthy joyful child turned into a "shell of a person." Similarly parents can be turned into lifelong caretakers of a seriously injured child depriving them of a chance to have a normal family life. In the broad range of human experience what can be worse than this.
The article in 54 ALR 4th page 112 indicates that historically jurisdictions more often than not have refused to accept this theory of liability but the modern trend and the recent cases increasingly accept it. Many of the courts that reject this theory of recovery point to the practical problems that would be presented. There is an excellent discussion of these issues in Section 2(b) at pages 117 et seq. of the ALR article. Some of the same objections were raised against the recognition of a claim for loss of spousal consortium and the Supreme Court dealt with and dismissed those concerns in a discussion that in many respects parallels the discussion in Section 2(b) of the 54 ALR 4112 article.
The Hopson court said at page 493-494:
 The difficulty of assessing damages for loss "of consortium is not a proper reason for denying CT Page 7527 the existence of such a cause of action inasmuch as the "logic of [that reasoning] would also hold a jury incompetent `to award damages for pain and suffering." . . . The subjective states such as grief, fright, anxiety, apprehension, humiliation and embarrassment have long been viewed as genuine and deemed compensable under the concept of pain and suffering. . . . The task of computing damages for a loss of consortium is no more difficult for a judge or jury than arriving at an award for pain and suffering.
 Recent decisions have recommended that claims by spouses, whether for physical injuries or consortium losses, be joined in one action and tried before a single trier or fact. . . . In that way, the danger of improper verdicts will be minimized. For example, while a claim for loss of consortium could include as elements of damages loss of companionship, society, affection, sexual relations and moral support, the recovery in a particular case could be limited to the elements established in that case by means of instructions from the court describing to the jury those damages which are recoverable and those which are not. . . .
 Moreover, because a consortium action is derivative of the injured spouse's cause of action, the consortium claim would be barred when the suit brought by the injured spouse has been terminated by settlement or by an adverse judgment on the merits. Millington v. Southeastern Elevator Co.,
supra, 508. See also Diaz v. Eli Lilly Co.,
supra, 167. Thus a joinder of claims, together with proper instructions to the jury and close scrutiny of the verdicts, will be sufficient to minimize the potential for improper verdicts.
Much of the same reasoning applies to the cause of action here and the same practical solutions and reasoning applies.
Perhaps the best argument against recognition of this cause of action was set forth in Toscano v. Sinsteden supra:
"Judicial expansion of existing law to permit a CT Page 7528 cause of action for loss of filial consortium, in a non-bystander situation would open the door to uncounted varieties of claims involving adopted children, foster children, step children and even siblings. We believe that the decision to open such a door and to control the extent of such opening should be made by the legislature."
But this is an argument for judicial refinement of the cause of action not barring it by means of a motion to strike. People shouldn't have to rely for redress when they are harmed solely on the hope that the legislature will decide to act — if that were the case the plaintiff in Orlo v. ConnecticutCo., 128 Conn. 231 (1941) might still be sitting in the car with the electric utility wires sparkling and jumping all over the roof. I see no rational reason why, if the doctrine were accepted adopted children and step children should not be covered. Doesn't the plaintiff have to prove his loss and emotional damage by a preponderance of evidence? Siblings should not have the doctrine apply to cover the negligent injury inflicted on brothers and sisters since unlike husbands and wives and parents and children they don't have the same duty of care and societally expected companionship imposed on their relationships.
Also courts have adopted various limitations to this theory of recovery. One jurisdiction had limited the parent's right of action to the child's minority, Shockley v. Prier,225 N.W.2d 495, 500 (Wis., 1975).
As the ALR article notes at § 2(b) page 120 courts have outlined factors that a jury should consider when deciding the extent of damages in these kinds of cases. Thus the jury can be told to consider the actual relationship between parent and child — the love and affection shown and conduct of each toward the other, the personality and character of the child and parent and the susceptibility of the parent to suffer loss, Shockley v. Prier, 225 N.W.2d 495 500 (Wis., 1975). One court recognized the doctrine on the basis of representations in the complaint that prior to the injury to the child the parent and child had a happy and harmonious family relationship, Dymek v. Nyquist, 469 N.E.2d 659, 666
(Ill., 1984). One court recognized the doctrine on the basis of representations in the complaint that prior to the injury to the child the parent and child had a happy and harmonious CT Page 7529 family relationship, Dymek v. Nyquist, 469 N.E.2d 659, 666
(Ill., 1984). In a case such as this the fact that the child here obviously had not developed a long term relationship with the parents should be taken into consideration in assessing damages but that is not a reason to bar the cause of action.
Furthermore, several courts that have recognized the right of a parent for loss of a child's consortium have done so where the child has been almost completely incapacitated by the injuries and the child's society with the parent has thereby been severely limited, Reben v. Ely, 705 P.2d 1360
(Ariz., 1985) Yordon v. Savage, 279 So.2d 844, 845, (Fla., 1973), Shockley v. Prier, 225 N.W.2d 495, 496 (Wis., 1975). Injuries of this severity could perhaps be required if this cause of action is permitted. But such questions are addressed more appropriately in a summary judgment motion or perhaps in formulating jury instructions.
Finally the defendant also argues that under our wrongful death statute, § 52-555, "the focus is on the damages sustained by the decedent not by members of the decedent's family Also on the same page of its reply brief the defendant argues: "Our legislature has not permitted recovery by family members for injury caused by the death of a family member." This is not a death case but even if it were, the suggestion that allowing the cause of action where the child does not die would create inconsistency if such actions were disallowed where the child died misses the point. What power should the legislature have to prevent common law courts from recognizing new causes of action where injuries to the citizens requires redress where the legislature has not directly spoken on the matter? None that our constitution is prepared to recognize.
The court believes that the reasoning of Sliney is persuasive, there is a harm that has been done, and practical steps can be taken to reasonably limit recovery to appropriate cases. For all of these reasons the motion to strike these counts is denied.
The court should also state that when the motion to strike is being used to test a new cause of action, a trial court should permit the plaintiff to develop a factual basis for the claim. That is, as long as a suggested new cause of action has what may be called, for want of a better term a prima facie legal viability it would be fairer and wiser to CT Page 7530 allow the new theory to be tested by way of summary judgment or after trial. Sometimes legal questions require a factual setting within which to be decided. Just because we have a pleading device called a motion to strike it shouldn't be regarded as a straightjacket preventing a proper testing of new legal theories.
2.
Negligent Infliction of Emotional Distress, Mothers's Claim
In the fourth count and the seventh count the plaintiff mother alleges distress arising from fear for the well-being of her child. As a result of the alleged carelessness and negligence of the defendant in the delivery of the baby severe injury was caused to the child. As a result the plaintiff mother claims to have suffered severe emotional distress.
The defendant relies on Maloney v. Conroy 208 Conn. 392,402 (1988) to argue that recovery should not be allowed because that case held our state does not recognize a cause of action for so-called bystander emotional distress. In the reply brief the defendant concedes the mother was not a bystander in the birthing process; but argues "she was indeed a bystander insofar as she seeks to recover for any emotional distress she may have incurred as a result of viewing any alleged negligence as to the care and treatment of her son."
Despite the holding in Maloney in Hyland et al v. Stateof Conn. 7 CSCR 1021 (1992) a court refused to strike an action such as the one before the court. The case distinguished Maloney by saying that the defendant's alleged malpractice breached a duty to her by virtue of the patient — physician relationship. In this sense the mother is not a bystander. The court quoted from two earlier cases which said:
 "to infer that a mother is a bystander at the birth of her infant manifests a basic misunderstanding of the duty owed a patient by a physician. In such circumstance . . . there are two within the zone of danger and the doctor owes a duty to each . ." Brittun v Borelli 7 Conn. L Trib. #25 p. 11 (1981) CT Page 7531
 "There is a duty of proper obstetrical care owed to a mother during childbirth and for a breach of that direct duty there may be recovery by the mother for emotional distress" Santilli v. Kharma 2 CSCR 446 (1987)
The court in Hyland then found that the allegations of the complaint were sufficient to raise a claim for emotional distress under Montinieri v. SNET Co. 175 Conn. 337, 345
(1978). Other cases supporting the reasoning of Hyland areMichaud v. Johnson 4 CSCR 720 (1989) and Hall v Mt. SinaiHospital 8 CSCR 185 ((1993)
I think the reasoning of Hyland is persuasive but I'm not sure that it directly deals with the concerns raised byMaloney about allowing claims for emotional distress to bystanders in the malpractice area. I suppose the court for the same reasons set forth in Maloney could decide to impose the same limitations in malpractice situations on Moninieri [Montinieri]
actions for emotional distress where for one reason or another the plaintiff can't be characterized as a "bystander".
I will try to approach the problem from another perspective. I concluded in a prior case that Connecticut should permit an action for bystander emotional distress in certain situations, Corchesne v. Dickau Bus Co. et al11 Conn. L. Rptr. 463 (1994). Under the criteria of that case the plaintiff mother here would have a cause of action for bystander emotional distress if she could show that she meets the second prong of the test set forth in Thing v. La Chusa771 P.2d 814 (Cal, 1989) — she was present at the injury producing event when it happened and was aware it was causing the child injury. Paragraphs 8 and 13 would seem to satisfy that prong and the other elements would seem to be met. I believe that if an action for bystander emotional distress is permissible in a case like this involving a claim by a mother the reasoning of Maloney would not preclude a bystander emotional distress recovery even in a case where the underlying claim is for malpractice.
Maloney involved a claim by a daughter against two doctors for severe emotional distress resulting from alleged malpractice in treating the mother. In making the broad CT Page 7532 statement that recovery for bystander emotional distress is not permitted in malpractice situations the court said the following:
 "To allow recovery by one, like the plaintiff, who has been more or less constantly "at the beside" of the malpractice victim during the period of treatment is likely to cause hospitals and other medical treatment facilities to curtail substantially the extent of visitation of patients that is presently permitted. Such a response by providers of medical care to the risk of liability to visitors whose sensitivity and relationship to the patient may result in emotional disturbances from observing' treatment of loved ones that they view as improper would seem inevitable if such claims were to become more frequent. The restriction of current liberal practices with respect to patient visitation in order to reduce the incidence of bystander emotional disturbance claims would be a regrettable social consequence of enlarging the right to recover for emotional disturbances based upon the impact of medical malpractice upon bystanders.
 Another undesirable sequel that is likely to follow upon our creation of a duty to a patient's visitors or relatives is that medical personnel may feel obligated to respond to the usually uniformed complaints of visitors concerning the treatment of patients more for fear of stimulating emotional disturbances upon the part of the visitors than because of the merits of the complaint. Medical judgments as to the appropriate treatment of a patient ought not to be influenced by the concern that a visitor may become upset from observing such treatment or from the CT Page 7533 failure to follow some notion of the visitor as to care of the patient. The focus of the concern of medical care practitioners should be upon the patient and any diversion of attention or resources to accommodate the sensitivities of others is bound to detract from that devoted to patients.
 Obviously, if the attention of medical practitioners is properly called to some deficiency in the treatment of a patient by anyone, that circumstance may be significant in deciding whether there has been malpractice. It is, however, the consequences to the patient, and not to other persons, of deviations from the appropriate standard of medical care that should be the central concern of medical practitioners. In the case before us, if the defendants should have responded to the various requests the plaintiff alleges she made about her mother's condition, they should be held liable for the consequences of their neglect to the patient or her estate rather than to the plaintiff. 208 Conn. at pp. 402-403.
In a case brought by a mother for severe injury to the child during the birthing process these concerns don't arise. It would be silly to say permitting recovery in these types of cases would force hospitals to curtail visitation. The mother is a captive audience while giving birth how can there be a danger that mothers as a class will be excluded from hospitals if recovery is permitted in a situation like this.
Also Maloney says that medical personnel may feel obligated to respond to the usually uniformed complaints of visitors concerning the treatment of patients. But again the mother is delivering; her complaints whether "uninformed" or not in a diagnostic sense would often be crucial to a doctor in evaluating the actual medical steps that should be taken.
So I would deny the motion to strike the mother's claim for emotional distress here both on the grounds stated in CT Page 7534 Hyland and on the position that in the unique situation of a mother claiming injury to her child during the birthing process the reasoning behind the Maloney bar to recovery in the malpractice area for bystander emotional distress does not provide the basis for a limitation on a Montinieri theory of recovery based on the policy concerns set forth in Maloney.
The motions to strike the Seventh Count and the Fourth Count are denied.
Negligent Infliction of Emotional Distress, Father
The father makes a claim for negligent infliction of emotional distress against the doctor and the hospital.
It is true that in a medical malpractice action a doctor-patient relationship is required. That wouldn't necessarily preclude a recovery for negligent infliction of emotional distress. Also I agree with cases like Hyland which hold that a doctor owes a duty of proper medical care to a mother during childbirth; his duties as a physician run to mother and child. But the negligent acts here occurred while the child was yet to be born or in the birth process.
To extend the physicians duty of care to the father in a situation like this would greatly expand the scope of liability and would be difficult to implement. Liability would have to depend on the degree of the father's involvement in the mother's treatment, presence at the place of birth, perhaps the relations between the parents. Even if these concerns could be overcome it would be difficult to contemplate the rationality of a jurisdiction which would deny recovery under the holding of Maloney to a father in this situation if he labeled his action as one for bystander emotional distress but then allow recovery to the same type of injury when he put a different label on his claim — negligent infliction of emotional distress. The policy reasons set forth in Maloney which have been referred to in this opinion would seem to apply no matter which theory of recovery is being advanced. Could it be expected that the plaintiff daughter in Maloney would be recognized as having a right to sue the doctors under a Montinieri theory?
I am not basing this decision on a lack of foreseeability. Thus, when courts reject recovery for CT Page 7535 bystander emotional distress they do not make their decision turn on lack of foreseeability, see Tobin v. Grossman249 N.E.2d 419, 422 (N.Y., 1969); they really are concerned with the general societal impact of allowing such actions. The same societal impact the court was worried about in Maloney,208 Conn. at pp. 403-404.
It is true that the New Jersey courts allow a cause of action to the father in the type of claim now before the court, Giardina v. Bennett 111 N.J. 412 (1988), Frame v. Kohari115 N.J. 638 (1989), Carey v. Lovett 132 N.J. 44 (1993) as does California Andalon v. Superior Court 162 Cal.App.3d 600, 200 Cal. Rptr 890 (1986).
New Jersey appears to limit the father's cause of action in ways similar to the limitations put on bystander emotional distress in California, cf Thing v. LaChusa supra. In New Jersey the father "must contemporaneously observe the malpractice and its effect on the victim. . . Finally the injury to the victim should be `shocking' in the sense that the father did not have time to prepare for the injury," Careyv. Lovett 132 N.J. at page 61. Interestingly in the allegation of the father under this theory he states he was present in the delivery room but does not allege that like the mother did that he was aware the alleged malpractice was causing the child injury.
But in any event it should be noted that California and New Jersey for quite a long time have recognized an action for bystander emotional distress — California since 1967, Dillonv. Legg 441 P.2d 912 (1968), New Jersey since 1980, Portee v.Jaffee 417 A.2d 521. Not only has no appellate court done so here but Maloney has clearly instructed the trial courts that even if such a cause of action were to be permitted it would not be allowed in a malpractice case. This court knows of no such limitation imposed by New Jersey or California. Admittedly these two causes of action, bystander emotional distress and negligent infliction of emotional distress rely on different elements. But both these theories of recovery present similar concerns as to appropriate limitations on their ambit in a case like the one now before the court. Given the decision in Maloney and also because even if the cause of action were to be recognized I don't believe it has been properly alleged, under the Carey v. Lovett restrictions, the court will strike the Ninth and the Twelfth counts. CT Page 7536
Bystander Emotional Distress, Father
In the Tenth and Thirteenth Counts the father makes a claim for bystander emotional distress. The plaintiff tries as he must to distinguish Maloney v Conroy supra from his case. He points to the language at page 404 of the decision.
 "We are persuaded that the recognition of a cause of action under the circumstances pleaded in the complaint would have consequences detrimental to the community as a whole that outweigh the benefit of a few hypersensitive individuals would be likely to derive from permitting such an action to proceed"
The plaintiff then says the father is not a "hypersensitive individual" who observed the negligence of the defendants and the results of that conduct.
It should be noted that in Maloney the action was brought by a daughter claiming to have suffered emotional disturbance by seeing the malpractice of the doctors treating her mother; the mother apparently died. The court noted the plaintiff observed the mother deteriorate. When the court used the word hypersensitive it was referring to the problem always present in bystander emotional distress cases brought by close relatives — how to distinguish between the natural grief over loss of a loved one and feelings arising from the fact that malpractice caused the suffering and death; see 208 Conn. at p. 309. The problem is how to separate out those people whose grief over the loss itself would be so great anyway it would be hard to determine how much added grief was caused by malpractice. I think the court was saying this parcelling out problem would not be worth the effort in malpractice cases since so many negative practical effects might be brought about if bystander emotional distress were allowed.
In fact the very same reasons not to allow the cause of action in the ordinary malpractice case apply with equal or stronger reason in the case of a father in this type of case. Will hospitals consider restricting the father's involvement in the child delivery process if the action is permitted? Will doctors and hospitals have to be concerned about every CT Page 7537 comment made by the father concerning treatment? (See generally the considerations noted by the Maloney court at page 403.)
There is no acceptable way to distinguish Maloney vConroy supra from this case. The Tenth and Thirteenth counts are stricken.
The Ninth, Tenth, Twelfth and Thirteenth counts are stricken. The motion to strike is denied as to the Fourth, Fifth, Seventh, and Eighth count.
Corradino, J.