[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON DEFENDANTS' MOTION TO STRIKE
Plaintiffs instituted this action alleging that Philip Reed, Jr., suffered injuries and death as a result of negligent medical care provided to him by the defendants. The plaintiff, Elizabeth Reed, Administratrix of the Estate of Philip Reed, Jr., has asserted a claim for wrongful death. Elizabeth Reed, as Philip Reed, Jr.'s widow, has also made a claim for loss of consortium. The plaintiffs, Jackson Reed and Philip Reed, the decedent's sons, have asserted claims for the loss of the "services, companionship, and society" of their father. CT Page 6103
The defendants, Norwalk Hospital and New Canaan Medical Group, have moved to strike the claims for loss of parental consortium as alleged by Jackson Reed and Philip Reed in counts four and five of the complaint for failing to state a cause of action under Connecticut law.
The defendants' motions to strike test the legal sufficiency of the claims asserted by the plaintiffs. P.B. § 152. In ruling on the motion to strike, the court must assume the truth of the factual allegations of the complaint. Mingachos v. CBS, Inc.,196 Conn. 91, 108-09 (1985).
The well settled Connecticut law is that damages resulting from death are only recoverable as authorized by statute. Ladd v.Douglas Trucking Co., 203 Conn. 187, 195-97, 523 A.2d 1301 (1987);Foran v. Carangelo, 153 Conn. 356, 359, 216 A.2d 356 (1966). There is no wrongful death statute authorizing recovery for loss of parental consortium. The Connecticut statutes allowing for the recovery of damages for wrongful death pertain only to losses of the decedent and loss of marital consortium. C.G.S. §§ 52-555,52-555a. Therefore, to the extent that plaintiffs Jackson and Philip Reed seek recovery for post mortem loss of parental consortium, they have failed to state a legally cognizable cause of action.Antoinette Wright, et al v. Anesthesia Association of New Haven,P.C., 10 Conn. L. Rptr. No. 13, 428 (January 17, 1994, Hodgson, J.); accord Magdalena Valdes, et al v. Jay Williams, et al,
10 Conn. L. Rptr. No. 15, 508 (January 31, 1994, Novack, J.) (recovery not permitted for loss of filial consortium in wrongful death actions).
Alternatively, the plaintiffs argue that a cause of action has been stated for the loss of parental consortium relating to injuries sustained prior to Philip Reed, Jr.'s death. Historically, Connecticut common law did not recognize loss of consortium claims. See Marri v. Stamford Street R. Co., 84 Conn. 9,78 A. 582 (1911) (rejecting a claim for loss of spousal consortium). This precedent was abandoned by our Supreme Court inHopson v. St. Mary's Hospital, 176 Conn. 485, 408 A.2d 260 (1979), which overruled Marri and held that with certain procedural limitations, claims for loss of spousal consortium would be recognized.
There is no appellate decision squarely addressing the issue whether the Hopson holding should be expanded to allow recognition of a cause of action for ante mortem loss of parental consortium CT Page 6104 caused by another's negligent conduct. The Supreme Court in Taylorv. Keefe, 134 Conn. 156 56 A.2d 768 (1947), held that the law did not protect a child's loss of the alienation of his mother's affections. However, this case was not grounded specifically on the negligence of the defendant (See Taylor v. Keefe, supra,134 Conn. 162, where the Court discussed the possibility of a loss of affection claim asserted by a parent against a child's spouse because of the child's marriage), and much of Taylor's reasoning appears to have been undercut by the Court's more recent decision in Hopson.
The Appellate Court in Mahoney v. Lensink, 17 Conn. App. 130,141-142, rev'd on other grounds, 213 Conn. 548, 569 A.2d 518 (1990), also intimated that the right to consortium arises out of the marriage contract and does not extend to the parent-child relationship. However, this discussion in Mahoney was dicta as indicated by the Court's acknowledgement that no appellate court had expressly addressed the issue (Id., 141, n. 7), as well as by the Court's holding that the filial consortium claim before it failed because it sought post mortem damages not authorized by statute.
The Superior Court cases decided after Hopson have split on whether a cause of action for loss of parental consortium exists. Cases rejecting the consortium claims based on the parent-child relationship include:
 Giatrelis v. Krauss, 8 CSCR 420 (March 31, 1993, Hadden, J.); Reardon v. Middlesex Hospital, Superior Court, Judicial District of New London, Docket No. 522694 (August 27, 1992, Hendel, J.); O'Hazo v. Sousa, 7 Conn. L. Rptr. 62 (July 8, 1992, Langenbach, J.); Michaud v. St. Mary's Hospital, 4 Conn. L. Rptr. 442 (August 21, 1991, Byrne, J.); Livingston v. Avery Center Obstetrics Gynecology, 1 Conn. L. Rptr. 464
(April 9, 1990, Meadow, J.); Seger v. Dunne, 3 CSCR 233
(January 22, 1988, Hennessey, J.); Shattuck v. Gulliver, 40 Conn. Sup. 95 (June 22, 1984, Pickett, J.); Hinde v. Butler, 35 Conn. Sup. 292 (July 5, 1979, Lexton, J.); accord, Clark v. Romeo, 561 F. Sup. 1209 (D. Conn. 1983).
On the other hand, a growing number of cases recognize loss of consortium claims by a child based on injuries to the parent.
 Foschini v. Leblanc, 14 Conn. L. Rptr. 167 (March 17, 1995, Flynn, J.); Steeves v. Alexander Trucking Co.,
CT Page 6105 14 Conn. L. Rptr. 532 (July 6, 1995, Corradino, J.); Paradiso v. Nasinka, 9 CSCR 227 (January 31, 1994, Gray, J.); Cherry v. ABF Freight Systems, Inc., 12 Conn. L. Rptr. 101 (June 29, 1994, Hartmere, J.); Beckwith v. Akus, 8 CSCR 364 (March 15, 1993, Hurley, J.); Kizina v. Minier, 7 CSCR 339 (January 24, 1992, Santos, J.); Henderson v. Micciche, 6 Conn. L. Rptr. 317
(May 1, 1992, Murray, J.)
After a careful review of these conflicting authorities, this court concludes that the cases recognizing a cause of action for anti-mortem loss of parental consortium provide a better reasoned analysis of this issue.
The primary argument advanced by the cases rejecting loss of parental consortium claims is that the Supreme Court's holding inHopson is limited to spousal consortium claims. Certainly, the right to consortium recognized in Hopson arose from and was based on the marital relationship, but it does not at all follow that the underlying thrust of the Court's reasoning is limited to the marital contract. Indeed, much of the discussion in Hopson
concerns how past, legal emphasis on the service aspects of the marriage contract operated to preclude consortium claims first as made by the wife, and later as made by both spouses, and how this emphasis has become discredited. See Hopson v. St. Mary'sHospital, supra, 176 Conn. 487-492.
Superior Court cases rejecting parental consortium claims have also stressed that the marriage relationship is characterized by conjugal relations and child rearing responsibilities not associated with the parent-child relationship. However, the consortium losses found to be compensable in Hopson are not so exclusively limited. The Court explained that "loss of consortium could include as elements of damages loss of companionship, society, affection, sexual relations and moral support." Hopson v.St. Mary's Hospital, supra, 176 Conn. 494; see Steeves v. AlexanderTrucking Co., supra, 14 CLR 534 , quoting Berger v. Weber,304 N.W.2d 424, 426 (Mich. 1981) ("Sexual relations [however] are but one element of the spouse consortium action. The other elements love, companionship, affection, society, comfort, services and solace — are similar in both [spousal and parental] relationships and in each are deserving of protection").
Although characteristics such as companionship, society and affection are associated with many interpersonal relationships, CT Page 6106 these elements have unique significance in the special relationship between a child and his parents. Just as the Supreme Court inHopson explained that spousal consortium claims could no longer be dismissed by emphasizing the husband's quasi-proprietary interest in his wife's services (Id., 487-88), the law cannot now reject parental consortium claims by viewing a child "merely as another servant in a household of paterfamilias", Kizina v. Minier, supra,5 Conn. L. Rptr. 483.
Modern conditions require recognition of the importance of the parent-child relationship; parental involvement and support is significant to a child's emotional and cognitive development, and a loss of this support can severely impact this development. The necessity and benefits of parental consortium to both the child and society cannot seriously be questioned. This court agrees with Judge Murray's conclusion that recognizing a consortium right on behalf of a child is "compelled by the state's public policy to strengthen the family and to protect children from injury."Henderson v. Miccichi, supra, 7 CSCR 583. The significance and importance of this relationship are most obviously acute when the children are minors, but do not entirely disappear when the children reach majority age.
The other numerous arguments advanced by defendants to support their motions to strike the ante mortem, parental consortium claims have been rejected in very cogent opinions which this court adopts.Steeves v. Alexander Trucking Co., supra; Cherry v. ABF FreightSystems, Inc., supra; Kizina v. Minier, supra; see generally,Hopson v. St. Mary's Hospital, supra, 176 Conn. 492-94.
One generalized concern is that any recognition of parental consortium claims would push the Hopson reasoning down a slippery slope, opening the door to unending litigation. The concern is that loss of consortium claims could be so expansively extended that claims will be filed by an insured person's siblings, grandparents, cousins or even "significant others". Certainly, a large circle of family and friends can be emotionally impacted by an injury to a loved one, but the law does not automatically authorize them all to have the right to sue the person causing the injury. The law only imposes liability for an injury that is a foreseeable consequence of the failure to exercise reasonable care. See Attardo v. Anbriscoe, 147 Conn. 708, 711-12, 166 A.2d 498
(1960). Liability will not be imposed when the damages sustained are inconsequential or remote. See Robinson v. Southern NewEngland Telephone Co., 140 Conn. 414, 418, 101 A.2d 491 (1953). CT Page 6107
Furthermore, the children's claims recognized here arise from the very special and specific relationship between a parent and a child. Some cases have recognized loss of parental consortium claims, but have rejected loss of "filial" consortium claims, that is, claims by parents for the loss of their child's consortium. See Paradiso v. Nasinka, supra, 9 CSCR 227; but see Sliney v.Denisanko, 8 CSCR 887 (August 6, 1993, Gordon, J.) (recognizing a claim for loss of consortium asserted by a parent). Thus, the ultimate scope of loss of consortium claims will obviously be established by future judicial or legislative decisions. However, the crucial consideration here is that this court should not reject the legitimate claims of these plaintiffs solely because the court's recognition of their claims may or may not be extended in future cases.
Thus, defendants' motions to strike counts four and five of the complaint are granted, but only to the extent that plaintiffs Jackson Reed and Philip Reed, Jr. seek post mortem damages arising from the death of Philip Reed, Jr. The motions are denied in all other respects, so that plaintiffs Jackson Reed and Philip Reed are allowed to recover loss of consortium damages arising prior to the death of Philip Reed, Jr.
Dated this 21st day of August, 1996.
STEVENS, JUDGE